HARRY M. ROBERTS v. R. E. BURTON and WYTHE M. PEYTON
COMPANY.

(Filed 10 June, 1927.)

1. **Taxation—License Tax—Principal and Agent—Sales—Commissions—
   Statutes—Real Estate Agents.**

   A real estate agent may not recover his commission from the owner in
   making a sale when he has not paid his license tax as required by our
   statute, Public Laws 1925, ch. 101, but in the action it must be shown
   that the services rendered come within the meaning of the statute.

2. **Appeal and Error—Instructions—Requests for Instructions—Issues—
   Agreement of Parties—Courts.**

   Exceptions to the refusal of the court to give special prayers for in-
   struction will not be sustained when it appears on appeal that the parties
   had agreed that the court should answer the issues to which they were
   addressed as a matter of law after verdict had been rendered on the
   other issues, and this has been done.

3. **Judgments—Verdict—New Trials—Contracts.**

   Where the plaintiff sues to recover from the defendant one-half of the
   profits derived from the sale of real estate as agents for the owner, under
   an agreement to that effect as to certain lands, a judgment upon the
   verdict in his favor which includes commissions on defendant's sale of
   lands of others not included in the contract sued on, is reversible error
   and entitled the defendant to a new trial.

APPEAL by defendant Burton from *Shaw, J.,* at March Term, 1927,
of BUNCOMBE.

On 26 September, 1925, the plaintiff and the appellant entered into
a written agreement to take options on lands adjoining those of the
plaintiff and sell them and divide the profits. Burton took an option
on a tract owned by the plaintiff's wife; and Roberts and Burton
took an option on 270.12 acres, the property of W. H. Sumner, at $100
an acre. The plaintiff alleged that this option was taken in Burton's
name and that the Sumner land was sold to William and Mark Griffin
for $238.60, and at a profit of $138.60 an acre, making a total profit of
$37,454.80; that the plaintiff was entitled to one-half this amount and
Burton to the other half; that the defendants by a secret agreement
induced the Griffins to pay them $7,500 in cash, and to make notes for
the remainder in various sums payable at different dates. The plaintiff
alleged that the defendants have failed to account with him; that a
receiver of the money and notes has been appointed, and that the plain-
tiff is entitled to recover from the defendants $3,750, and one-half the
notes executed by the Griffins.

Denying the material allegations of the plaintiff the defendants
alleged that the plaintiff and his wife gave Burton an option on her

tract containing 173.54 acres at the price of $600 an acre; that the two tracts were sold together for $380 an acre; that the total price at which the land was sold by the defendants was $168,590.80, or $37,454.40 in excess of the purchase price; that the expense incurred in making the sale was $18,724.40, leaving $18,724.40 as the net profit. The verdict was as follows, the sixth and eighth issues having been answered by the court as matters of law, after the others had been answered by the jury:

1. Did the defendant Burton enter into a contract with his codefendant, Peyton & Company, to assist the said Burton in making sale of the Roberts and Sumner tract? Answer: Yes.

1½. If so, did said Peyton & Company perform said services? Answer: Yes.

2. If so, what amount, if any, were the defendants, Peyton & Company, entitled to under said contract? Answer: $18,727.40.

3. Did the plaintiff Roberts have any notice of the said contract entered into between the said Burton and Peyton & Company until after the transaction had been closed by sales contract between the plaintiff and wife and Griffins, and Sumners and Griffins? Answer: No.

4. Did the defendant, Wythe M. Peyton & Company have notice at the time it entered into the contract with R. E. Burton that the defendant, R. E. Burton, had any contract with the plaintiff Roberts in regard to the division of profits on the Sumner tract? Answer: Yes.

5. What were the services rendered by the defendant Peyton & Company under the arrangement with R. E. Burton reasonably worth? Answer: $9,315.50.

6. Was the plaintiff entitled to any part of the $7,500 cash payment received by the said Burton as profits on the sale of land to said Griffins, as alleged in the complaint; and if so, what part? Answer: Yes, one-fourth part of the $7,500 cash payment, to wit, $1,895, with interest from 9 January, 1926.

7. If so, did the plaintiff waive his right to be paid in cash his part of the $7,500 referred to in the foregoing issue, as alleged by defendant Burton? Answer: No.

8. Is the plaintiff entitled to any part of the $29,954.80 in notes received by the defendant, R. E. Burton, from William Ray Griffin and M. A. Griffin as profits on the sale of lands to said Griffins, as alleged in the complaint; and if so, what part? Answer: Yes, one-fourth part of each of said notes.

9. What was the value per acre of the Sumner tract at the time of the sale of said property to William Ray Griffin and M. A. Griffin? Answer: $100.

10. What was the value per acre of the Roberts tract at the time of the sale of said property to William Ray Griffin and Mark A. Griffin? Answer: $600.

Thereupon it was adjudged that the plaintiff recover of the defendant Burton $1,875 (one-fourth of $7,500), with interest from 9 January, 1926, and one-fourth of each of the notes aggregating $29,454.80 ($7,363.70), with interest from 9 January, 1927, and that the notes in the hands of the receiver be charged with the payment of these amounts; that the receiver sell the notes and apply the proceeds in payment, the notes received from Burton being primarily and those received from Peyton Company secondarily liable for the payment of the amount due the plaintiff—no sale to be made if the judgment was satisfied within ninety days. The defendant Burton excepted and appealed.

*Vonno L. Gudger, Gallatin Roberts and Mark W. Brown for plaintiff.*
*Bourne, Parker & Jones for appellant Burton.*

ADAMS, J. There was no error in refusing to dismiss the action as in case of nonsuit. It is true that every individual buying real estate for profit, whether as agent or otherwise, is required to pay a license tax, and that no recovery can be had on a contract forbidden by law either in express terms or by implication from the fact that the transaction has been made an indictable offense or has been subjected to the imposition of a penalty. Laws 1925, ch. 101, sec. 30; *Finance Co. v. Hendry,* 189 N. C., 549. But we do not think the evidence is sufficient to show that the plaintiff was engaged in buying or selling real estate within the meaning of the cited statute. *Respess v. Spinning Co.,* 191 N. C., 809. The first and third assignments are therefore overruled; the second is abandoned.

Assignments four and five are addressed to the court's refusal to give the jury certain prayers for instructions in reference to the amount of the plaintiff's recovery; but the parties, reserving their right to except, agreed, as appears of record, that the two issues relating to the amount of the recovery should be answered by the court after the other issues had been answered by the jury. The judge answered these two issues, and of course there was no reason or occasion for giving the instructions. There is no specific exception to his answers, but the sixth assignment of error is "the action of the court in signing the judgment as appears in the record." This may be treated as an exception to the judgment, including of course the answers given to the sixth and eighth issues. Under the agreement they were to be answered by the judge as matters of law. (R. 57.) The plaintiff alleged that the total profit was $37,454.80—$7,500 in cash and $29,954.80 in notes. Deducting from the total profit the sum given Peyton & Company in response to the second issue ($18,727.40), we have as a remainder an equal sum (a part

in money, a part in notes), one-half of which is awarded the plaintiff by virtue of the two issues which were answered by the court. If it be assumed that the calculation is correct, the amount apportioned or divided between the plaintiff and Burton represents the net profit of the sale of the Roberts and the Sumner tracts, but the agreement of the plaintiff and Burton made 26 September, 1925, was confined to options on lands adjoining the Roberts property. Their agreement to divide the profits did not include the profits derived from the sale of the land of Mrs. Roberts. The profit arising from the sale of the Sumner land should be determined by the jury under appropriate instructions by the court. For the reason indicated there must be a

New trial.